In the Matter of

**MARK C. ESCH and**
**MONICA L. ESCH,**                                            **Case No. 13-31689-pp**

                    **Debtors.**                                            **Chapter 11**

**DEBTORS' PLAN OF REORGANIZATION**
**(As Modified January 16, 2015)**

Mark C. Esch and Monica L. Esch, as chapter 11 debtors-in-possession (the "Debtors"),

propose the following Plan of Reorganization ("Plan") pursuant to 11 U.S.C. § 1121.

**ARTICLE I**
**DEFINITIONS**

Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in the Plan. The terms defined shall be equally applicable to both the singular and plural forms of each term unless the context otherwise requires. Any term used in the Plan that is not defined here, but that is defined in the Code shall have the meaning assigned to that term in the Code. Any term used in initially capitalized form in the Plan shall have the same meaning in the disclosure statement, filed with the Plan, unless the context otherwise requires.

1.1     *Administrative Expense* shall mean any claim, as defined by the Code, which arises after the Petition Date and constitutes (i) an unpaid or unreimbursed cost or expense of administering the chapter 11 case allowed under the Code including, without limitation, any actual and necessary expenses of preserving the estate of the Debtors; (ii) any actual and necessary expense of operating the business of the Debtors; (iii) any indebtedness or obligation incurred or assumed by the Debtors in connection with the conduct of their business or for the acquisition or lease of property or for the procurement of services; (iv) any costs or expenses of the Reorganized Debtors for the administration and implementation of the Plan, for the administration, prosecution or defense of any Claim by or against the Debtors, and for administration of the Plan; and (v) any allowances of compensation and reimbursement of expenses to the extent allowed by the Final Order, whether arising before or after the Effective Date.

1.2     *Allowed Claim* shall mean any Claim (a) with respect to which a proof of claim has

David J. Espin
KERKMAN & DUNN
757 North Broadway, Suite 300
Milwaukee, WI 53202
Phone:  414. 277.8200
Facsimile: 414.277.0100
Email: despin@kerkmandunn.com

been filed with the Bankruptcy Court on or before the date to be fixed as provided by the Bankruptcy Court pursuant to Rule 3003; or (b) scheduled in the list of creditors prepared and filed pursuant to Rule 1007(b) and not listed as disputed, contingent, or unliquidated as to amount; and for either (a) or (b), any Claim for which no objection has been filed within the applicable limitation fixed by Rule 3007 or by a Bankruptcy Court order, or any Claim for which any such objection has been resolved by an order no longer subject to appeal or for which no appeal is pending.

1.3     *Allowed Priority Claim* shall mean an Allowed Claim for which the holder asserts, and is determined to be entitled to, priority under § 507 of the Code or under any other provision of the Code including, without limitation, Claims for Administrative Expenses and tax claims.

1.4     *Allowed Secured Claim* shall mean an Allowed Claim secured by a valid and enforceable lien, security interest, mortgage, or other recognized interest in property in which the Debtors have an interest, which is not void or voidable under any state or federal law or subject to set off under § 553 of the Code, but only to the extent of the Claim's value pursuant to § 506(a) of the Code.  The portion of an Allowed Claim that is not an Allowed Secured Claim shall be an Allowed Unsecured Claim except as otherwise provided for herein.

1.5     *Allowed Unsecured Claim* shall mean any Allowed Claim that is not an Allowed Secured Claim, an Allowed Priority Claim, or an Administrative Expense.

1.6     *Bankruptcy Court* shall mean the United States Bankruptcy Court for the Eastern District of Wisconsin and any federal court with concurrent or appellate jurisdiction.

1.7     *Case* shall mean the chapter 11 case of the Debtors, Case No. 13-31689-PP.

1.8     *Cash* shall mean by a check drawn on the Debtors' bank accounts which have sufficient funds to pay the check when it is presented to the Debtors' bank.

1.9     *Claim* shall mean any right to payment, or right to an equitable remedy for breach of contract or performance if such breach gives rise to a right of payment, asserted against the Debtors that was in existence on or as of the Petition Date, whether or not the right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured, or unsecured.

1.10    *Class* shall mean the classes specified in Article II of the Plan.

1.11    *Code* shall mean title 11 of the United States Code as amended from time to time.

1.12    *Collateral* means any property or interest in property of the Debtors or their estate that is subject to an unavoidable Lien to secure the payment or performance of a Claim.

1.13    *Confirmation Date* shall mean the date upon which the Confirmation Order entered pursuant to § 1129 of the Code is entered on the Bankruptcy Court's docket.

1.14    *Confirmation Order* shall mean the order entered by the Bankruptcy Court confirming the Plan.

1.15    *Creditor* shall mean any Person or entity that has a Claim against the Debtors that arose or is deemed to have arisen on or before the Petition Date, including a Claim against the Debtors' estate under §§ 502(g) or 502(i) of the Code.

1.16    *Cure Amount* shall mean the monetary amount necessary to cure any defaults of an executory contract or unexpired lease through the Confirmation Date.

1.17    *Debtors* shall mean Mark C. Esch and Monica L. Esch.

1.18    *Disclosure Statement* shall mean the disclosure statement filed by the Debtors pursuant to 11 U.S.C. § 1125 after such disclosure statement has been approved, after notice and a hearing, by an order entered by the Bankruptcy Court on the docket.

1.19    *Disputed Claim* shall mean a Claim against the Debtors the allowance of which, in whole or in part, is the subject of a timely objection; provided, however, that for purposes of determining the aggregate amount of Disputed Claims against the Debtors' estate, Disputed Claim shall mean the lesser of (a) the total amount of Disputed Claims as filed with the Bankruptcy Court or (b) the total amount of Disputed Claims as estimated by the Bankruptcy Court pursuant to § 502(c) of the Code; and, provided, further, that in the event the Bankruptcy Court estimated a Disputed Claim for purposes of allowance pursuant to § 502(c), that estimation shall constitute the Allowed Claim.

1.20    *Effective Date* shall mean the date when all of the conditions set forth in Article X of the Plan have been satisfied or waived.

1.21    *Final Order* shall mean an order entered by the Bankruptcy Court as to which the time to appeal or to seek review or rehearing has expired and as which no appeal or other proceedings for review or rehearing shall then be pending.

1.22    *FRSB Stipulation* shall mean the stipulation between Fox River State Bank and the Debtors, filed at Docket No. 119.

1.23    *Homestead* shall mean the Debtors' homestead as of the Petition Date located at 5349 Wood Lilly Lane, Waterford, Wisconsin.

1.24    *Insider* shall have the meaning as it is defined in 11 U.S.C. § 101(31).

1.25    *Lender(s)* shall mean North Shore, BMO Harris, Green Tree, Nationstar, Cenlar, Fox River State Bank, Southport Bank, and Tri City Bank (individually, a "Lender," and collectively, the "Lenders").

1.26    *Lien* has the meaning assigned to it in § 101(37) of the Code.

3

1.27     *Net Monthly Cash Flow* shall mean the sum of incoming Cash and outgoing Cash realized in the Reorganized Debtors' normal business operations for a one-month period.

1.28     *Person* means any individual, corporation, general partnership, limited partnership, association, limited liability company, joint stock company, joint venture, estate, unincorporated organization, government or any political subdivision thereof, governmental unit, or other entity.

1.29     *Petition Date* shall mean August 29, 2013, the date on which the Debtors filed their voluntary petition for reorganization under chapter 11 of the Code.

1.30     *Plan* shall mean this chapter 11 plan of reorganization and any amendment, modification or alteration thereto in accordance with the Code.

1.31     *Prepetition Loan Documents* means the valid and enforceable promissory notes, mortgages, security agreements, guaranties and related loan documents in effect as of the Petition Date between the Debtors and the Secured Lenders, as amended by the Plan or an order entered by the Bankruptcy Court during this case, but (a) excluding the effect of any provision described in § 365(b)(2) of the Code that would act as a default immediately before the Effective Date, and (b) subject to the following amendments:  (i) any and all provisions in the loan documents that conflict with or are otherwise inconsistent with the Plan, orders entered by the Bankruptcy Court and/or the Debtors' financial projections are deleted, (ii) the Debtors shall have the right to prepay the outstanding amount due to the Secured Lenders at any time without payment of a prepayment penalty, (iii) all net worth, debt service coverage, insolvency, capital requirements and other financial performance requirements, covenants and/or ratios are deemed deleted, (iv) the Secured Lenders shall provide the Debtors with written notice of all payment and non-payment defaults, a 5-day cure period for payment defaults and a 15-day cure period (or such longer period as may be necessary and reasonable under the circumstances) to cure non-payment defaults, (v) the Secured Lenders' determination that there has been a material change in collectability of the loan shall not constitute a loan default and any such provision or similar subjective provision is deleted, (vi) any prepetition defaults under the Prepetition Loan Documents are waived by the Secured Lenders, (v) prohibitions on secondary liens and indebtedness securing purchases made in the ordinary course of business are deleted, (vii) the Debtors shall have the right to contest and/or remove mechanic's and similar liens, and (viii) minimum occupancy requirements and covenants are deleted.

1.32     *Properties* shall mean the separate parcels of real property (identified by separate tax parcel numbers) owned by the Debtors as of the Petition Date and used by the Debtors to produce rental income.

1.33     *Pro-Rata Share* shall mean, with respect to any holder of an Allowed Claim, an amount calculated by and reduced to the proportion that the amount of the Claim bears to the aggregate amount of all Claims in the same Class.

1.34     *Released Properties* shall mean the Properties owned by the Debtors as of the Petition Date that are either (i) abandoned by the Debtors during the Case, (ii) sold or transferred by the Debtors during the Case or pursuant to the Plan, (iii) subject to an order from the Bankruptcy Court granting relief from the automatic stay to a Lender, or (iv) otherwise surrendered by the

4

Debtors to a Lender.

1.35     *Reorganized Debtors* shall mean the Debtors after the Plan has been confirmed by the Confirmation Order and after the Effective Date.

1.36     *Retained Properties* shall mean the Properties that are retained by the Reorganized Debtors pursuant to the Plan.

1.37     *Secured Claim* shall mean any Claim against the Debtors secured by a valid and enforceable lien, security interest, mortgage or interest in property in which the Debtors have an interest, which is not void or voidable under state or federal law, or subject to set off under § 553 of the Code, but only to the extent of the Claim's value pursuant to § 506(a) of the Code.

1.38     *Secured Lenders* shall mean the Claimants in Class 3 who have Secured Claims against the Debtors.

1.39     *Security Deposit Claimants* shall mean any claims of the various tenants with regard to any security deposit paid to the Debtors before the Petition Date pursuant to the terms of a Tenant Lease.

1.40     *Tenant Lease(s)* shall mean the executory contract(s) and/or unexpired lease(s) entered into between the Debtors or their agents and each respective tenant for the possession of one or more of the Properties, or a portion of a Property.

1.41     *Tri City Stipulation* shall mean the stipulation between Tri City Bank and the Debtors, filed at Docket No. 138.

1.42     *Unsecured Claim* shall mean any Claim other than a Secured Claim, a priority claim, an Administrative Expense, or an equity interest.

1.43     *Water Works* means Racine and Kenosha water and sewer utilities.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

The Plan classifies the Claims against the Debtors as follows:

2.1     Class 1 shall consist of all Administrative Expenses.

2.2     Class 2A shall consist of all Allowed Unsecured Priority Tax Claims which are entitled to priority pursuant to § 507(a)(8) of the Code.

2.3     Class 2B shall consist of all Allowed Secured Priority Tax Claims which are entitled to priority pursuant to § 507(a)(8) of the Code.

2.4     Class 2C shall consist of the Allowed Claims of Water Works.

5

2.5     Class 3A shall consist of the Allowed Secured Claims of North Shore Bank, F.S.B.

2.6     Class 3B shall consist of the Allowed Secured Claim of BMO Harris Bank, N.A.

2.7     Class 3C shall consist of the Allowed Secured Claim of Seterus, Inc.

2.8     Class 3D shall consist of the Allowed Secured Claim of Green Tree Servicing, LLC.

2.9     Class 3E shall consist of the Allowed Secured Claim of Nationstar Mortgage LLC.

2.10    Class 3F shall consist of the Allowed Secured Claim of Cenlar FSB

2.11    Class 3G shall consist of the Allowed Secured Claim of Fox River State Bank.

2.12    Class 3H shall consist of the Allowed Secured Claim of Southport Bank.

2.13    Class 3I shall consist of the Allowed Secured Claim of Tri City National Bank.

2.14    Class 4 shall consist of the Allowed Secured Claim of U.S. Bank, N.A.

2.15    Class 5A shall consist of the Allowed Claims of the Security Deposit Claimants whose Tenant Leases were rejected or will be rejected by the Confirmation Order.

2.16    Class 5B shall consist of the Allowed Claims of the Security Deposit Claimants whose Tenant Leases have been assumed or will be assumed by the Confirmation Order.

2.17    Class 6 shall consist of the Allowed Unsecured Claims that are not included in Classes 1 through 5B.

2.18    Class 7 shall consist of the Allowed Equity Interests in the Debtors.

**ARTICLE III**
**TREATMENT OF CLAIMS AND INTEREST**

A global summary of payments under the Plan is attached to the Disclosure Statement as **Exhibit 1** and is further detailed below.

**3.1     *Class 1:  Administrative Expenses.*** Administrative Expenses in Class 1 are unimpaired under the Plan and shall be paid (i) in full in Cash on or before the Effective Date, (ii) upon such other terms as may be agreed to in writing by the holder of any Allowed Expense in Class 1 and the Debtors, or (iii) if such expense is allowed after the Effective Date, as soon as such expense is allowed.  Administrative Expenses incurred in the ordinary course of business by the Debtors after the Petition Date shall be paid in the ordinary course.  An Administrative Expense for which notice of intent to assert the Administrative Expense was required to be filed by an order of the Bankruptcy Court and was not filed shall not be paid, and such Administrative Expense shall

6

be forever discharged and barred, and subject to injunctive relief provided for by §§ 1141 and 524 of the Code.

**3.2** **_Class 2A: Allowed Unsecured Priority Tax Claims._** The Allowed Claims in Class 2A are unimpaired under the Plan. The Debtors believe the Claims in Class 2A will be amended to $0 once the Debtors file the relevant state and federal tax returns. Any balance owing will be paid in full in equal monthly installments of principal and interest at the rate specified by 11 U.S.C. § 511 over a term of 60 months from the Petition Date, with payments commencing on the 15th day of the first month following the Effective Date. If the Reorganized Debtors substantially default on the payment of any IRS federal tax or Wisconsin Department of Revenue ("WDOR") Claims due under the Plan, the entire tax debt still owed to the IRS or WDOR shall become due and payable immediately, and the IRS or WDOR may collect these unpaid tax liabilities through the administrative collection provisions of the Internal Revenue Code or Wisconsin Statutes.

**3.3** **_Class 2B: Allowed Secured Priority Tax Claims._** The Allowed Claims in Class 2B are impaired under the Plan. The members of Class 2B hold Claims for real property taxes that accrued prior to the Petition Date that are secured by the Homestead or the Properties. On Retained Properties and the Homestead, Class 2B Claims not paid on the Effective Date will be paid in full in equal monthly installments of principal and interest at the rate specified by 11 U.S.C. § 511 over a term of 60 months from the Petition Date, with payments commencing on the 15th day of the first month following the Effective Date.

On Released Properties, Class 2B Claims will be paid in full upon the sale of each Released Property, whether pursuant to (i) the Plan or an order of the Bankruptcy Court under § 363 or otherwise, or (ii) the sale of such Property pursuant to state law in a foreclosure sale or otherwise. On Released Properties, any applicable stay or injunction arising from the Debtors' filing the chapter 11 case is terminated so that Class 2B claimants may exercise any of their applicable non-bankruptcy rights. Any Liens securing Class 2B Claims survive after the Confirmation Date. The Debtors shall have no obligation to make payments on Class 2B Claims with respect to Released Properties.

Any and all tax escrow accounts held by the Secured Lenders shall be applied to property taxes by the Secured Lenders or turned over to the Debtors and applied to property taxes when such taxes become due.

**3.4** **_Classes 3A through 3I (Claims of Secured Lenders):_**

**(a)** **_Class 3A: Allowed Claims of North Shore._**

(i) **_Impairment._** The Allowed Secured Claims of North Shore in Class 3A are impaired.

(ii) **_Amount._** North Shore's aggregate total Allowed Secured Claim is deemed to be $218,669.

(iii) **_Retention of Liens._** North Shore shall retain its Liens on its Collateral to secure the obligations due to North Shore on its Allowed Secured Claims pursuant to the Plan. North Shore's Prepetition Loan Documents shall remain in full force and effect to the

7

extent they are not altered by the Plan.

(iv) *Treatment of Collateral.* North Shore's Collateral is listed on **Exhibit 2** to the Disclosure Statement. North Shore's Collateral shall be retained by the Debtors and the Reorganized Debtors.

(v) *Treatment of Allowed Secured Claims.* North Shore's total Allowed Secured Claim shall be treated as separate Allowed Secured Claims as set forth on **Exhibit 2 to** the Disclosure Statement. North Shore's Allowed Secured Claims shall be paid by the Reorganized Debtors in equal monthly installments of principal with fixed interest at the rate of 4.0% per annum, amortized over 30 years with a 10-year term, with no prepayment penalty. North Shore shall release its Liens on its Collateral in the event the balance of the amount of its Allowed Secured Claim allocated to such piece of Collateral is paid in full. The monthly installments will commence on the 15th day of the first month after the Effective Date and will be paid on the 15th day of each subsequent month until the full principal amount is paid. The Reorganized Debtors shall maintain real estate tax escrow accounts at North Shore which will be funded by monthly contributions equal to 1/12th of the base real estate tax bill for the preceding year for North Shore's Retained Properties.

**(b)** *Class 3B: Allowed Claims of BMO.*

(i) *Impairment.* The Allowed Secured Claims of BMO in Class 3B are impaired.

(ii) *Amount.* BMO's aggregate total Allowed Secured Claim is deemed to be $1,287,840.

(iii) *Retention of Liens.* BMO shall retain its Liens on its Collateral to secure the obligations due to BMO on its Allowed Secured Claims pursuant to the Plan. BMO's Prepetition Loan Documents shall remain in full force and effect to the extent they are not altered by the Plan.

(iv) *Treatment of Collateral.* BMO's Collateral is listed on **Exhibit 2** to the Disclosure Statement. BMO's Properties shall be Released Properties.
Unless a motion or stipulation has been filed with the Court determining the status of BMO's Collateral, at BMO's option, BMO's Properties will either be (i) abandoned by the Debtors, (ii) sold by the Debtors during the Case or pursuant to the Plan, (iii) subject to an order of the Bankruptcy Court granting relief from the automatic stay on such Property, or (iv) otherwise surrendered by the Debtors to BMO.

(v) *Treatment of Allowed Secured Claims.* BMO's Allowed Secured Claims shall be deemed fully satisfied by the net proceeds it receives from the sale or surrender of its Collateral, either during or after the Case, or from the net proceeds BMO receives from exercising its state court rights with respect to its Collateral.

8

(vi)    *Treatment of Allowed Unsecured Claim.*  BMO agrees to waive any distribution to which it may be entitled on its Class 6 Unsecured Claim and agrees to accept the Plan.

**(c)    *Class 3C:  Allowed Claims of Seterus.***

(i)    *Impairment.*  The Allowed Secured Claim of Seterus in Class 3C is impaired.

(ii)    *Amount.*  Seterus's aggregate total Allowed Secured Claim is deemed to be $442,396.

(iii)    *Retention of Liens.*  Seterus shall retain its Liens on its Collateral to secure the obligations due to Seterus on its Allowed Secured Claims pursuant to the Plan.  Seterus's Prepetition Loan Documents shall remain in full force and effect to the extent they are not altered by the Plan.

(iv)    *Treatment of Collateral.*  Seterus's Collateral is listed on **Exhibit 2** to the Disclosure Statement.  Seterus's Collateral shall be retained by the Debtors and the Reorganized Debtors.

(v)    *Treatment of Allowed Secured Claims.*  Seterus's Allowed Secured Claims shall be paid by the Reorganized Debtors in equal monthly installments of principal with fixed interest in the amount of $2,429.59, amortized pursuant to Seterus's Prepetition Loan Documents with the entire balance due on April 1, 2041, with no prepayment penalty.  In addition, the Debtors shall make monthly tax escrow payments to Seterus that shall be equal to $1/12^{th}$ of the base real estate tax bill on Seterus's Collateral for the preceding year. Seterus shall release its Liens on its Collateral in the event the balance of the amount of its Allowed Secured Claim allocated to such piece of Collateral is paid in full.  The monthly installments will commence on the 1st day of the first month after the Effective Date and will be paid on the 1st day of each subsequent month until the full principal amount is paid.

**(d)    *Class 3D:  Allowed Claims of Green Tree.***

(i)    *Impairment.*  The Allowed Secured Claim of Green Tree in Class 3D is impaired.

(ii)    *Amount.*  Green Tree's Allowed Secured Claim is deemed to be $79,553.

(iii)    *Retention of Liens.*  Green Tree shall retain its Liens on its Collateral to secure the obligations due to Green Tree on its Allowed Secured Claim pursuant to the Plan.  Green Tree's Prepetition Loan Documents shall remain in full force and effect to the extent they are not altered by the Plan.

(iv)    *Treatment of Collateral.*    Green Tree's Collateral is listed on

9

**Exhibit 2** to the Disclosure Statement. Green Tree's Collateral shall be retained by the Debtors and the Reorganized Debtors.

       (v)    *Treatment of Allowed Secured Claims.* Green Tree's Allowed Secured Claims shall be paid by the Reorganized Debtors in equal monthly installments of principal with fixed interest at the rate of 5.0% per annum, amortized over 30 years with a 10-year term, with no prepayment penalty. Green Tree shall release its Liens on its Collateral in the event the balance of the amount of its Allowed Secured Claim allocated to such piece of Collateral is paid in full. The monthly installments will commence on the 15th day of the first month after the Effective Date and will be paid on the 15th day of each subsequent month until the full principal amount is paid.

    **(e)**    *Class 3E: Allowed Claims of Nationstar.*

       (i)    *Impairment.* The Allowed Secured Claims of Nationstar in Class 3E are impaired.

       (ii)    *Amount.* Nationstar's total Allowed Secured Claim is deemed to be $109,444.

       (iii)    *Retention of Liens.* Nationstar shall retain its Liens on its Collateral to secure the obligations due to Nationstar on its Allowed Secured Claim pursuant to the Plan. Nationstar's Prepetition Loan Documents shall remain in full force and effect to the extent they are not altered by the Plan.

       (iv)    *Treatment of Collateral.* Nationstar's Collateral is listed on **Exhibit 2** to the Disclosure Statement. Nationstar's Collateral shall be retained by the Debtors and the Reorganized Debtors.

       (v)    *Treatment of Allowed Secured Claims.* Nationstar's Allowed Secured Claim shall be paid by the Reorganized Debtors in equal monthly installments of principal with fixed interest at the rate of 4.0% per annum, amortized over 30 years with a 30-year term, with no prepayment penalty. Nationstar shall release its Liens on its Collateral in the event the balance of the amount of its Allowed Secured Claim allocated to such piece of Collateral is paid in full. The monthly installments will commence on the 1st day of the first month after the Effective Date and will be paid on the 1st day of each subsequent month until the full principal amount is paid.

    **(f)**    *Class 3F: Allowed Claims of Cenlar.*

       (i)    *Impairment.* The Allowed Secured Claims of Cenlar in Class 3F are impaired.

       (ii)    *Amount.* Cenlar's aggregate total Allowed Secured Claim is deemed to be $159,384.

       (iii)    *Retention of Liens.* Cenlar shall retain its Liens on its Collateral to

secure the obligations due to Cenlar on its Allowed Secured Claims pursuant to the Plan. Cenlar's Prepetition Loan Documents shall remain in full force and effect to the extent they are not altered by the Plan.

        (iv)    *Treatment of Collateral.* Cenlar's Collateral is listed on **Exhibit 2** to the Disclosure Statement. Cenlar's Collateral shall be retained by the Debtors and the Reorganized Debtors.

        (v)    *Treatment of Allowed Secured Claims.* Cenlar's total Allowed Secured Claim shall be treated as separate Allowed Secured Claims as set forth on **Exhibit 2** to the Disclosure Statement. Cenlar's Allowed Secured Claims shall be paid by the Reorganized Debtors in equal monthly installments of principal with fixed interest at the rate of 4.625% per annum, amortized over 30 years with a 10-year term, with no prepayment penalty. Cenlar shall release its Liens on its Collateral in the event the balance of the amount of its Allowed Secured Claim allocated to such piece of Collateral is paid in full. The monthly installments will commence on the 15th day of the first month after the Effective Date and will be paid on the 15th day of each subsequent month until the full principal amount is paid.

      **(g)**    ***Class 3G:  Allowed Claims of Fox River State Bank.***

        (i)    *Impairment.* The Allowed Secured Claims of Fox River State Bank in Class 3G are impaired.

        (ii)    *Amount.* For voting purposes on the Plan, Fox River State Bank's aggregate total Allowed Secured Claim is deemed to be $1,318,600 and its Allowed Unsecured Claim shall be deemed to be $263,052.

        (iii)    *Retention of Liens.* Fox River State Bank shall retain its Liens on its Collateral.

        (iv)    *Treatment of Collateral and Allowed Secured Claim.* The treatment of Fox River State Bank's Collateral and Allowed Secured and Unsecured Claims shall be subject to the FRSB Stipulation. Capitalized terms not otherwise defined in the Plan shall have the meaning as they are defined in the FRSB Stipulation. Fox River State Bank's Collateral shall be Released Properties and have been surrendered to Fox River State Bank so it may proceed with state court foreclosure actions. The Allowed Secured Claim of Fox River State Bank shall be fully satisfied by its receipt of its Collateral pursuant to the FRSB Stipulation.

        (v)    *Treatment of Allowed Unsecured Claim.* The Allowed Unsecured Claim of Fox River State Bank shall be treated as a Class 6 Unsecured Claim. Fox River State Bank agrees to waive any distribution to which it may be entitled on its Class 6 Unsecured Claim and agrees to accept the Plan.

      **(h)**    ***Class 3H:  Allowed Claims of Southport Bank.***

        (i)    *Impairment.* The Allowed Secured Claims of Southport Bank in

Class 3H are impaired.

(ii)  *Amount.*  Southport Bank's aggregate total Allowed Secured Claim is deemed to be $325,014.

(iii)  *Retention of Liens.*  Southport Bank shall retain its Liens on its Collateral to secure the obligations due to Southport Bank on its Allowed Secured Claims pursuant to the Plan.  Southport Bank's Prepetition Loan Documents shall remain in full force and effect to the extent they are not altered by the Plan.

(iv)  *Treatment of Collateral.*  Southport Bank's Collateral is listed on **Exhibit 2** to the Disclosure Statement. Southport Bank's Collateral shall be retained by the Debtors and the Reorganized Debtors.

(v)  *Treatment of Allowed Secured Claims.*  Southport Bank's total Allowed Secured Claim shall be treated as separate Allowed Secured Claims as set forth on **Exhibit 2** to the Disclosure Statement.  Southport Bank's Allowed Secured Claims shall be paid by the Reorganized Debtors in equal monthly installments of principal with fixed interest at the rate of 5.5% per annum, amortized over 25 years with a 5-year term, with no prepayment penalty. Southport Bank shall release its Liens on its Collateral in the event the balance of the amount of its Allowed Secured Claim allocated to such piece of Collateral is paid in full.  The monthly installments will commence on the 15th day of the first month after the Effective Date and will be paid on the 15th day of each subsequent month until the full principal amount is paid.  The Reorganized Debtors shall maintain real estate tax escrow accounts at Southport Bank which will be funded by monthly contributions equal to 1/12th of the  real estate tax bill for the preceding year for Southport Bank's Retained Properties.

**(i)  *Class 3I:  Allowed Claims of Tri City Bank.***

(i)  *Impairment.*  The Allowed Secured Claims of Tri City Bank in Class 3I are impaired.

(ii)  *Amount.*  For voting purposes on the Plan, Tri City's aggregate total Allowed Secured Claim is deemed to be $890,722 and its Allowed Unsecured Claim shall be deemed to be $276,122.

(iii)  *Retention of Liens.*  Tri City shall retain its Liens on its Collateral.

(iv)  *Treatment of Collateral and Allowed Secured Claim.*  The treatment of Tri City's Collateral and Allowed Secured and Unsecured Claims shall be subject to the Tri City Stipulation.  Capitalized terms not otherwise defined in the Plan shall have the meaning as they are defined in the Tri City Stipulation.  Tri City's Collateral shall be Released Properties and have been surrendered to Tri City so it may proceed with state court foreclosure actions.  The Allowed Secured Claim of Tri City shall be fully satisfied by its receipt of its Collateral pursuant to the Tri City Stipulation.

(v)    *Treatment of Allowed Unsecured Claim.*  The Allowed Unsecured Claim of Tri City shall be treated as a Class 6 Unsecured Claim.  Tri City agrees to waive any distribution to which it may be entitled on its Class 6 Unsecured Claim and agrees to accept the Plan.

**3.5    *Class 4A: Allowed Secured Claim of U.S. Bank (Auto Loan).***  U.S. Bank's Class 4A Allowed Secured Claim is impaired.  On or before the Effective Date, the Debtors shall surrender the Ford F250 securing U.S. Bank's Allowed Claim in full satisfaction of U.S. Bank's Allowed Claim.

*Class 4B*: ***Allowed Secured Claim of Wells Fargo***.  Wells Fargo is deemed to have an impaired Allowed Secured Claim in the total amount of $2,800.  Wells Fargo's Allowed Secured Claim shall be paid in equally monthly installments over 60 months, without interest, with no prepayment penalties.  The monthly installments will commence on the fifteenth day of the first month after the Effective Date.

**3.6    *Classes 5A through 5B: Security Deposit Claimants.***  As part of the Tenant Leases, the Security Deposit Claimants may have provided the Debtors with security deposits to secure their obligations under each Tenant Lease.  Security deposits are (i) normally returned in the normal course of the Debtors' business, (ii) not separately escrowed by the Debtors.

***(a)    Class 5A: Leases Rejected by the Debtors***.  The Allowed Unsecured Claims of Tenants that arise from the Debtors' rejection of such Tenant Leases during this case shall be paid as a general Class 6 Unsecured Claim, unless otherwise ordered by the Bankruptcy Court.  **The Debtors hereby reject the Tenant Leases on any of the Released Properties, effective on the Confirmation Date.**  The Bankruptcy Court fixed the time for filing proof of claim in the Case; however, pursuant to Rule 3003(c)(3), members of Class 4A shall have 30 days from the Confirmation Date to file any proof of claim against the Debtors.

***(b)    Class 5B: Leases Assumed by the Debtors***.  All Tenant Leases that are not explicitly rejected by the Debtors by motion or pursuant to the Plan are hereby assumed.  The assumed Leases are (i) unimpaired by this Plan, and (ii) are therefore not entitled to vote on the Plan.  Security deposits that must be returned to the Security Deposit Claimants pursuant to the terms of each Tenant Lease will be returned in the normal course of business.

The Debtors' assumption of Tenant Leases (unless otherwise rejected by a motion filed with the Court) requires the Debtors and the Reorganized Debtors to continue performance pursuant to the terms of each such Tenant Lease, including the return of the Security Deposit Claimants' security deposits pursuant to the terms of each Tenant Lease.  There are no cure amounts necessary to be paid due to the Debtors' assumption of the Tenant Leases.

**3.7    *Class 6: Allowed General Unsecured Claims.***  Allowed Claims in Class 6 are impaired under the Plan.  Class 6 Creditors shall be paid by the Reorganized Debtors in equal monthly installments not to exceed $490 per month for 60 months, or until they are paid in full, without interest, with no prepayment penalties.  The monthly installments will commence on the fifteenth day of the first month after the Effective Date.

13

**3.8** *Class 7: Equity Interests in the Debtors.* The Interests in Class 7 are unimpaired and unaffected under the Plan. They shall retain their interests.

**3.9** *Prepayment Without Penalty.* At any time, the Reorganized Debtors may prepay, without penalty, any of their obligations under the Plan to any Creditor if the Debtors or Reorganized Debtors have the ability to do so and otherwise comply with their obligations under the Plan.

**3.10** *Continuance of Prepetition Loan Documents.* The Prepetition Loan Documents (as amended herein) shall continue in effect to the extent consistent with the provisions of the Plan. If requested by the Secured Lenders, the Reorganized Debtors shall execute Prepetition Loan Document assumption and amendment agreements reflecting the provisions of the Plan. Notwithstanding the foregoing, (a) such assumption and amendment agreements shall not modify or amend the Prepetition Loan Documents except as expressly provided in the Plan and orders entered by the Bankruptcy Court in this Case, (b) the Reorganized Debtors shall not be required to execute new or additional loan documents except for the assumption and amendment agreements referenced herein.

**3.11** *Personal Guaranties of Claims.* **The Debtors' guaranties pursuant to the Prepetition Loan Documents shall continue in effect after the Effective Date as to any Creditor or Claimant, except that such guaranties shall only secure the Reorganized Debtor's obligations under the Prepetition Loan Documents as amended by the Plan.**

**3.12** *Loan Defaults.* Any defaults under the Prepetition Loan Documents that occurred prior to the Effective Date are deemed waived by the Secured Lenders.

## ARTICLE IV
## PROVISION FOR TREATMENT OF DISPUTED CLAIMS

**4.1** *Objection to Claims; Prosecution of Disputed Claims.* The Debtors or the Reorganized Debtors shall object to the allowance of any Claims filed with the Bankruptcy Court with respect to which the Debtors or Reorganized Debtors dispute liability in whole or in part. All objections shall be litigated to a Final Order; provided, however, that the Reorganized Debtors may compromise and settle objections to Claims without notice, unless such notice is requested by any party in interest, and without the approval of the Bankruptcy Court. Unless otherwise ordered by the Bankruptcy Court, the Reorganized Debtors shall serve and file all objections to Claims within 30 days of the Confirmation Date, unless otherwise allowed by the Bankruptcy Court.

**4.2** *Payments and Distributions on Disputed Claims.* From and after the Effective Date, the Reorganized Debtors shall hold and reserve in a segregated account, for the benefit of each holder of a Disputed Claim, Cash in an amount equal to the Pro-Rata distribution that would have been made to the holder of any Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (i) the amount of the Disputed Claim or (ii) the amount in which the Disputed Claim shall be estimated by the Bankruptcy Court pursuant to § 502 of the Code for purposes of allowance. Any Cash reserved and held for the benefit of a holder of a Disputed Claim shall be

14

treated as a payment and reduction on account of such Disputed Claim for purposes of computing (a) any additional amounts to be paid in Cash in the event the Disputed Claim ultimately becomes an Allowed Claim or (b) any interest payable in accordance with the Plan by the Debtors with respect to such Disputed Claim at the time or times such cash is reserved. Any Cash reserved for the benefit of holders of Disputed Claims shall be held by the Reorganized Debtors in an interest-bearing account. No payment or distribution shall be made with respect to all or any portion of any Disputed Claim pending the entire resolution of the Claim by a Final Order.

At the time a Disputed Claim becomes, in whole or in part, an Allowed Claim, the holder of the Allowed Claim shall receive the payment(s) and distribution(s) to which it is then entitled under the Plan, together with any interest that has accrued on the amount of cash so reserved, but only to the extent that the interest is attributable to the amount of the Allowed Claim. Such payment(s) shall be made as soon as practicable after the date the Bankruptcy Court enters a Final Order allowing such Claim but in no event later than 30 days after the date of the Final Order. Any cash reserved for but not necessary to pay an Allowed Claim shall be retained by the Reorganized Debtors. Disputed Claims which are disallowed shall receive nothing to the extent they are disallowed.

## ARTICLE V
## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

**5.1** *Cash for Payments to Creditors on and after the Effective Date.* Except as otherwise provided for herein, payments to Creditors shall be from the regular business income of the Reorganized Debtors. Funds for payment of Administrative Expenses on or before the Effective Date will come from a $70,000 401(k) "loan" that will reduce Monica Esch's monthly salary by approximately $200, from $3,900 to $3,700. A cash budget prepared internally by the Debtors and their counsel is attached to the Disclosure Statement. This budget is forward looking, contains estimates and assumptions, and may not reflect actual outcomes of the Debtors' operations. The Debtors may file a revised cash budget at any time prior to the Confirmation Date.

**5.2** *Management of Properties.* Except as otherwise provided for herein, the Reorganized Debtors shall manage their affairs after the Effective Date. The Reorganized Debtors will be responsible for management of leasing activities, negotiating and communicating with tenants, collecting rents and other account receivables, paying bills and expenses, contracting with third-parties for repairs and services needed for the Properties, and maintaining the books. The Debtors shall also be responsible for the general maintenance of the Properties, including general repairs, construction, electrical work, cleaning, and the selection of third-party contractors to perform larger projects necessary to keep the locations in marketable condition.

**5.3** *Withholding Taxes.* The Reorganized Debtors shall withhold from distributions under the Plan any property which must be withheld for taxes payable by the Person entitled to such property to the extent required by applicable law.

**5.4** *Professional Fees and Expenses.* Each Person retained or requesting compensation in this case pursuant to §§ 327, 328, 330, 503(b) or 1103 of the Code shall be entitled to file an application for allowance of final compensation and reimbursement of expenses in the

15

case by the date set by the Bankruptcy Court.

**5.5**    ***Mailing and Unclaimed Distributions.***  All distributions made by mail will be made to (a) the latest mailing address filed of record with the Bankruptcy Court for the party entitled thereto, (b) if no such mailing address has so been filed, the mailing address reflected in the schedule of assets and liabilities filed by the Debtors, or (c) any other address known to Debtors.  Any unclaimed distributions which would otherwise have been disbursed to a Creditor with respect to an Allowed Claim shall be retained as property of the Reorganized Debtors if the Creditor cannot be located.

**5.6**    ***Responsible Person.***  Except as otherwise may be provided herein, the Reorganized Debtors shall be responsible for the execution and implementation of the Plan.

**5.7**    ***Debtor's Property After Confirmation***.  The Reorganized Debtors shall retain possession of all of their property, including the Retained Properties, which shall be free and clear of all liens and encumbrances, except encumbrances of governmental authorities and utilities for easements and services, and as otherwise provided in the Plan.

**5.8**    ***Settlement of Actions Brought by the Debtors***.  The Reorganized Debtors may settle or compromise any action brought by them without notice, unless such notice is requested by any party in interest, or Bankruptcy Court approval.

**5.9**    ***Preference, Fraudulent Conveyances and Avoidance Actions***.  Except for (i) causes of action against a Person or entity which is not a Creditor and (ii) causes of action included in any objection by the Debtors or Reorganized Debtors to a proof of claim filed by the date for such objections set by the Bankruptcy Court, the Debtors will not bring any preferential transfer, fraudulent conveyance or other avoidance action under chapter 5 of the Code against any Creditor. All avoidance actions under chapter 5 of the Code against Creditors preserved in the Plan vest in the Reorganized Debtors.

**5.10**   ***Confirmation of the Plan Without Approval of Classes Entitled to Priority Over Class 7***.  If any Class is entitled to vote and votes to reject the Plan, the Debtors shall request that the Bankruptcy Court approve the Plan pursuant to § 1129(b)(1) of the Code.

**5.11**   ***Payment of U.S. Trustee Fees.***  The Reorganized Debtors shall pay all fees due after the Confirmation Date pursuant to 28 U.S.C. § 1930 until the case is closed.

**5.12**   ***Professional Fees***.  The Reorganized Debtors shall not pay any professional fees or costs incurred before the Confirmation Date except as approved by the Bankruptcy Court or otherwise allowed by law.  The payment of any professional fees or costs after the Confirmation Date to implement the Plan shall only be made if such fees and costs are reasonable.

## ARTICLE VI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.1** *Tenant Leases.*

      **(a)** *Assumed Tenant Leases.* Pursuant to Rule 6006(a), all Tenant Leases that have not otherwise (i) expired by their own terms prior to the Confirmation Date, or (ii) been rejected by the Debtors by motion or within this Plan, shall be assumed by the Debtors on the Confirmation Date (and assigned to the Reorganized Debtors). The Debtor hereby assumes the Tenant Leases with respect to the Retained Properties. All parties to each Tenant Lease shall retain their contractual rights pursuant to the terms of such Tenant Lease. The Debtors are not in default of the Tenant Leases and therefore there are no amounts necessary to cure any defaults.

      **(b)** *Rejected Tenant Leases*. If not already rejected, the Debtors hereby reject the Tenant Leases with respect to the Released Properties, unless otherwise assumed by a motion prior to the Confirmation Date. Pursuant to §§ 365(a) and 1123(b)(2) of the Bankruptcy Code, such rejection shall be deemed to have occurred immediately prior to the Petition Date.

**6.2** *Bar Date for Claims Relating to Rejected Leases or Executory Contracts.* Unless otherwise ordered by the Bankruptcy Court, Proofs of Claim(s) for damages arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Bankruptcy Court no later than thirty (30) days after the Confirmation Date. **All such Claim(s) not filed within the time set forth in this section shall be forever barred and extinguished against the Debtors, their estate, and the Reorganized Debtors.**

**6.3** All other executory contracts not specifically rejected in this Plan or otherwise assumed.

## ARTICLE VII
## AMENDMENTS AND WAIVER

      Except as otherwise provided in the Plan and § 1127 of the Code, any term of the Plan may be amended or modified at any time, and the enforcement and observance of any term of the Plan may be waived at any time provided that all holders of Claims affected by the amendment of waiver have received notice of the proposed amendment or waiver and have not objected in writing within a reasonable period of time and, in any event, any period of time which may be set by the Bankruptcy Court.

## ARTICLE VIII
## EFFECT OF CONFIRMATION

**8.1** *Discharge of Debtors*. Except as otherwise provided in the Plan or in the Confirmation Order, the Debtors will obtain a discharge as provided in § 1141 of the Code upon making their final payments as indicated in this Plan. The discharge of the Debtors and Reorganized Debtors shall be effective as to each Claim regardless of whether a proof of claim was filed for such Claim, whether the Claim is an Allowed Claim, or whether the holder of the Claim, debt or liability has accepted the Plan.

**8.2** *Injunction.* The Confirmation Order will provide, *inter alia,* that, except as

otherwise provided for in the Plan, all Persons who have held, hold or may hold Claims are permanently enjoined from and after the Effective Date from:

(a)    commencing and continuing in any manner any action or other proceeding of any kind with respect to any such Claim against the Reorganized Debtors, or any of their agents, employees, representatives, financial advisors, attorneys, accountants or affiliates of any such parties in their representative capacities as agents or employees of the Reorganized Debtors;

(b)    enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Reorganized Debtors or any of their agents, employees, representatives, financial advisors, attorneys, accountants or affiliates of any such parties, or the property of such parties with respect to such Claim;

(c)    creating, perfecting or enforcing any encumbrance of any kind against the Reorganized Debtors or any of their agents, representatives, financial advisors, attorneys or accountants of any such party or against the property of any such party or property of the Debtors and the Reorganized Debtors, with respect to any such Claim;

(d)    asserting any right of set-off, right of subrogation or recoupment of any kind against any obligation due the Reorganized Debtors, any of their agents, employees, representatives, financial advisors, attorneys, accountants or any affiliates of any such parties, or against the property of any such parties of the property of their affiliates, with respect to such Claim; and

(e)    commencing or continuing in any manner any action or other proceeding of any kind with respect to any Claim.

**8.3    *Consummation*.**  Upon substantial consummation of the Plan, the Reorganized Debtors may move for a final decree closing the Case and requesting such orders as may be just and equitable.

**ARTICLE IX**
**RETENTION OF JURISDICTION**

The Bankruptcy Court may retain jurisdiction over this Case, until the Plan has been fully consummated, for all appropriate purposes including, but not limited to, the following:

**9.1**    To hear and determine all applications for compensation of professionals under §§ 330 and 331 of the Code.

**9.2**    To classify or reclassify the Claim of any Creditor and to resolve any and all objections filed against any Claim.  Any failure of the Reorganized Debtors to object to or to examine any Claim for purposes of voting shall not be deemed a waiver of the Reorganized Debtors' right to object to or to re-examine any Claim in whole or in part.

**9.3**    To determine all questions and disputes arising under the Plan including those

regarding title to or interests in the Reorganized Debtors' assets as well as the resolution of all Claims, causes of action, controversies, disputes or conflicts, including any preference, fraudulent conveyance or avoidance action pending as of the Confirmation Date and for which jurisdiction is specifically retained in the Plan.

**9.4** To correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order necessary to carry out the purposes and intent of the Plan.

**9.5** To modify the Plan after confirmation.

**9.6** To enforce and interpret the terms and conditions of the Plan and to enforce all of the orders entered by the Bankruptcy Court.

**9.7** To enter any order, including orders for injunctive relief, necessary to enforce the title, rights and powers of the Debtors or Reorganized Debtors as well as the imposition of such restrictions, limitations, terms and conditions as the Bankruptcy Court may deem necessary.

**9.8** To supervise of approve any aspect of any Claim that might be pursued on behalf of the Debtors or Reorganized Debtors or any Creditor.

**9.9** To resolve all adversary actions brought in the Debtors' case.

**9.10** To enter any order concluding and terminating the case.

## ARTICLE X
## CONDITIONS PRECEDENT TO EFFECTIVENESS

The Effective Date of the Plan shall occur when each of the following conditions has been met or has been waived in writing by the Debtors and such writing has been filed with the Bankruptcy Court:

**10.1** The Confirmation Order shall have been entered by the Bankruptcy Court without any stay.

**10.2** There has not been an appeal of the Confirmation Order filed.

**10.3** Ten business days have passed after the last date for an appeal of the Confirmation Order to be filed.

## ARTICLE XI
## MISCELLANEOUS

**11.1** The headings in the Plan are for convenience and reference only, and shall not limit or otherwise affect the text of the Plan.

**11.2** The rules of construction used in Section 102 of Code shall apply to the

19

construction of the Plan.

**11.3**  The Articles of Incorporation or bylaws of the Reorganized Debtors and any of the yet-to-be-formed limited liability companies are hereby amended to include a provision prohibiting the issuance of nonvoting equity securities.

**11.4**  All fees under 28 U.S.C. § 1930, due to the U.S. Trustee, that have not been paid shall be paid within 10 days of the Confirmation Date.

**11.5**  The liens of all Creditors that have been discharged or avoided shall be released of record prior to any cash distribution or delivery of any property under the Plan to such Creditors.

**11.6**  The liens of every Creditor with a Claim that is disallowed or whose lien is avoided shall be void and shall be rendered void by the recording in the appropriate place of record of a certified copy of any order disallowing the Claim or avoiding the lien.

**11.7**  Any orders entered or agreements approved by the Bankruptcy Court for the use of cash collateral, for adequate protection or for payments in lieu of the lifting of the automatic stay shall be terminated upon entry of the Confirmation Order.  At that time, the relationship between the respective parties shall be governed by the Plan.

**11.8**  Unless otherwise provided for in the Plan, no holder of an Allowed Unsecured Claim shall be entitled to the accrual of post-petition interest on account of such Claim.

**11.9**  Any documents necessary to effect the provisions of the Plan will be filed with the Bankruptcy Court before the hearing on confirmation.

**11.10**  The attorney fees and costs to administer consummation of the Plan shall be reasonable.

**ARTICLE XII**
**CONCLUSION**

The Plan reflects the Debtors' best efforts to reorganize their business in a manner that preserves their continued viability, advances the interests of creditors, and complies in all aspects with the requirements of the Code.

Dated: January 16, 2015.

/s/ David J. Espin
David J. Espin
Kerkman & Dunn

Attorneys for the Debtors,
Mark C. Esch and Monica L. Esch

P.O. Address:

757 N. Broadway, Suite 300
Milwaukee, WI 53202-3612
Phone: 414.277.8200
Facsimile: 414.277.0100
Email: despin@kerkmandunn.com